IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

GEORGE R. SIMON,
    Petitioner,

vs.                                               Case No.: 3:05cv396/RV/EMT

JAMES R. McDONOUGH,
    Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1). Respondent filed an answer and relevant portions of the state court record (Docs. 13, 18). Petitioner filed a traverse (Doc. 15).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.    BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are undisputed by the parties and established by the state court record. On February 6, 2004, pursuant to a guilty plea, Petitioner was adjudicated guilty in the Circuit Court for Escambia County, Florida, of one count of DUI manslaughter and one count of felony DUI (third DUI conviction within ten years after a prior DUI conviction) (Doc. 18, Ex. B at 26, Ex. D at 30–35). Petitioner was sentenced to seven (7) years of incarceration followed by eight (8) years of probation on the DUI Manslaughter count, with credit

for pre-sentence jail time of 12 days, and five (5) years of probation on the felony DUI count, to run concurrently with the probation on the DUI Manslaughter count (*id.*, Ex. D at 30–35). Petitioner did not directly appeal his convictions and sentences.

On June 29, 2004, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 18, Ex. C). The trial court summarily denied the motion in a written opinion rendered on October 4, 2004 (*id.*, Ex. D). Petitioner appealed the decision to the Florida First District Court of Appeal (First DCA) (*id.*, Ex. E). The appellate court affirmed per curiam without written opinion on May 16, 2005, with the mandate issuing July 11, 2005 (*id.*, Exs. H, J). Simon v. State, 903 So. 2d 941 (Fla. 1st DCA May 16, 2005) (Table).

Petitioner filed the instant habeas action on October 12, 2005 (*see* Doc. 1 at 6). Respondent concedes that the petition is timely (Doc. 13 at 3–4).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States." As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19.

Section 2254 now provides:

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
   (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
   (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[1] The appropriate test in habeas cases was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13; Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding. *See* Wellington v. Moore, 314 F.3d 1256, 1260–61 (11th Cir. 2002); Robinson v. Moore, 300 F.3d 1320, 1343–45 (11th Cir. 2002). First, the court must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication. Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343. Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law. Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344. "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the relevant Supreme Court precedent." Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261

---

[1] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99, 120 S. Ct. at 1499–1503, 1511–16); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13, 120 S. Ct. at 1518–23). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

F.3d 1206, 1216 (11th Cir. 2001), *cert. denied*, 535 U.S. 1104, 122 S. Ct. 2310, 152 L. Ed. 2d 1065 (2002) (quoting Williams, 529 U.S. at 405)). "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404–06). If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority." Fugate, 261 F.3d at 1216. Likewise, if the facts of the Supreme Court cases and the petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." *Id.* (citing and quoting Williams, 529 U.S. at 406). A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 410. The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Bell v. Cone, 535 U.S. 685, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002) (quoting Williams, 529 U.S. at 411). Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003). A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by a federal court produces a firm conviction that [the state court] judgment is infected by constitutional

error." Williams, 529 U.S. at 389. "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 124 S. Ct. 2140, 2149, 158 L. Ed. 2d 938 (2004) (citation omitted). Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent. Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n.4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence." § 2254(e)(1); *see* Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).") (dictum); Fugate, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835–36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); *see also* Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations). Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence. *See* Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); Rutherford v. Crosby, 385 F.3d 1300, 1308 (11th Cir. 2004) ("[Petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record.")).

Within this framework, the court will review Petitioner's claims.

III. PETITIONER'S CLAIMS

    A.    <u>Ground one: "Petitioner was illegally sentenced where the predicate offenses are not apparent, in violation of his equal protection rights, Fifth Amendment."</u>

(Doc. 1 at 4). Petitioner asserts that from the face of the record, he did not have the requisite three DUI convictions to support his conviction of felony DUI; therefore, his conviction and sentence

violated the Equal Protection Clause (*id*.). Additionally, in his supporting memorandum, he appears to challenge his guilty plea on the ground that there was an insufficient factual predicate to support the felony DUI conviction and sentence (Doc. 1, supporting memorandum at 4–6).

Respondent contends that although Petitioner exhausted his claim in the state courts by raising it in his Rule 3.850 motion (Doc. 13 at 5), Petitioner is not entitled to federal habeas relief because the determination of how many prior convictions are needed to establish a crime such as felony DUI, and what qualifies as a conviction for purposes of that statute are to the state to determine (*id*. at 8). Respondent further argue that Petitioner cannot convert it to a federal issue simply by citing the Fifth Amendment (*id*. at 5–10).

In his Rule 3.850 motion, Petitioner claimed only that his sentence was illegal because the requisite predicate offenses for the charge of felony DUI did not exist. It is well established that federal habeas relief is available to correct only constitutional injury. 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67–68, 112 S. Ct. 475, 479–80, 116 L. Ed. 2d 385 (1991); Wainwright v. Goode, 464 U.S. 78, 83–84, 104 S. Ct. 378, 78 L. Ed. 2d 187 (1983). Errors of state law which do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief. *See* Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for federal habeas relief, since no question of a constitutional nature is involved.") (quoting Carrizales v. Wainwright, 699 F.2d 1053 (11th Cir. 1983)). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (citation omitted). Furthermore, "state courts are the ultimate expositors of state law," and federal courts must therefore abide by their rulings on matters of state law. Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 1886, 44 L. Ed. 2d 508 (1975) (citations and footnote omitted); Carrizales, 699 F.2d at 1055. Absent an overriding constitutional concern, the manner in which the state judicial system interprets its criminal statutes is not subject to federal habeas review. Armenia v. Dugger, 867 F.2d 1370, 1376 (11th Cir. 1989).

In the instant case, to the extent Petitioner seeks review of the state court's determination that he had sufficient predicate convictions to sentence him under the state felony DUI statute, his claim is not cognizable in federal habeas. It is solely the state courts' function to determine matters of

state law, including whether the number, nature, and timing of Petitioner's prior convictions qualified him for conviction of felony DUI. Therefore, to the extent Petitioner claims that his sentence for felony DUI was illegal because the state court erred in determining that the number and nature of his prior convictions qualified him for conviction under the state criminal statute, he is not entitled to federal review of this claim.

To the extent Petitioner challenges his plea on the ground that there was an insufficient factual predicate to support the felony DUI conviction and sentence, the court notes that Petitioner did not fairly present this challenge to his guilty plea in his Rule 3.850 motion (*see* Doc. 18, Ex. C at 3–5). In light of Respondent's waiver of the exhaustion defense as to this claim, the court will evaluate the claim de novo.

The test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to a defendant. North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970) (citing Boykin v. Alabama, 395 U.S. 238, 242, 89 S. Ct. 1709, 1711, 23 L. Ed. 2d 274 (1969)). A plea of guilty is not considered knowing and voluntary unless the accused is reasonably informed of the nature of the charge against him, the factual basis underlying the charge, and the legal options and alternatives that are available. *See* Henderson v. Morgan, 426 U.S. 637, 645, 96 S. Ct. 2253, 2258, 49 L. Ed. 2d 108 (1976); Stano v. Dugger, 921 F.2d 1125, 1142 (11th Cir. 1991) (citations omitted). "A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense." Morgan, 462 U.S. at 645 n.13 (citation omitted); Boykin, 395 U.S. at 243 & n.5. "A defendant receives 'real notice' of the charge when he has been informed of both the nature of the charge to which he is pleading guilty and its elements." Gaddy v. Linahan, 780 F.2d 935, 943 (11th Cir. 1986) (quoting Morgan, 426 U.S. at 645–47). The extent to which the elements must be explained varies with the circumstances, but at the very least, due process requires that the defendant receive a description of the "critical elements" of the charged offense, such as the element defining the requisite intent. Gaddy, 780 F.2d at 944–45 (citing Morgan, 426 U.S. at 644, 647 n.18).

Additionally, the accused should understand how his conduct satisfies the elements of the charge, and this entails that the accused have sufficient background information about the facts of his case to make an informed decision about the case against him. *Id.*, at 944–45.

Due process does not require that the defendant, in pleading guilty, be informed of each element of the crime at the plea hearing. Gaddy, 780 F.2d at 944 (emphasis in original) (citations omitted). "The defendant may receive detailed information about the elements of the offense beforehand. Most commonly, his attorney provides such information. Thus, for a plea to be knowing and voluntary, the defendant must be informed of the elements of the offense either at the plea hearing or on some prior occasion, and he must understand them." *Id.*; Stano, 921 F.2d at 1142 (citations omitted).

Due process also requires that a defendant's factual guilt of the crime charged be established. In a guilty plea situation, this requirement may be satisfied by a defendant's own solemn admission in open court that he is in fact guilty of the offense with which he is charged. Tollett v. Henderson, 411 U.S. 258, 267, 92 S. Ct. 1602, 1608, 36 L. Ed. 2d 235 (1973). However, an express admission of guilt, is not a constitutional requisite to the imposition of criminal penalty. Alford, 400 U.S. at 37. "An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Id.* When a defendant "intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt," a plea may be accepted even if accompanied by protestations of innocence." *Id.* The purpose of placing the facts on the record is not to establish guilt as a basis for a judgment of conviction, rather it is to aid in the constitutionally required determination that the defendant entered the plea intelligently and voluntarily, because it demonstrates a defendant's recognition that the evidence negates his claim of innocence and that he has nothing to gain by a trial and much to gain by entering a plea. *See* McCarthy v. United States, 394 U.S. 459, 467, 89 S. Ct. 1166, 1171, 22 L. Ed. 2d 418 (1969); Wallace v. Turner, 695 F.2d 545, 548 (11th Cir. 1983) (citing Alford, 400 U.S. at 37–38, 38 n.10; Willett v. Georgia, 608 F.2d 538, 540 (5th Cir. 1979)).

"Alford is based on the fact that the defendant could intelligently have concluded that, whether he believed himself to be innocent and whether he could bring himself to admit guilt or not,

the State's case against him was so strong that he would have been convicted anyway." Morgan, 426 U.S. at 648 n.1 (White, J., with whom Stewart, J., Blackmun, J. and Powell, J. joined, concurring). "[A] defendant cannot intelligently reach that conclusion, if he does not know the elements of the crime to which he is pleading and therefore does not know what the State has to prove; and his ignorant decision to plead guilty under such circumstances is not a reliable indication that he is in fact guilty." *Id.*

In the instant case, the information charging Petitioner with felony DUI, in violation of Florida Statutes sections 316.193, 316.193(1) and 316.193(2)(b)1, stated that Petitioner drove while under the influence on July 16, 2002, and that he was previously convicted of driving under the influence on January 7, 1999, in Mobile Municipal Count, Mobile, Alabama, and on July 3, 1991, in Prichard Municipal Court, Prichard, Alabama (Doc. 18, Ex. D at 28). Florida Statutes section 316.193 provides, in relevant part:

> (1) A person is guilty of the offense of driving under the influence and is subject to punishment as provided in subsection (2) if the person is driving or in actual physical control of a vehicle within this state and:
>
> (a) The person is under the influence of alcoholic beverages, any chemical substance set forth in s. 877.111, or any substance controlled under chapter 893, when affected to the extent that the person's normal faculties are impaired;
>
> (b) The person has a blood-alcohol level of 0.08 or more grams of alcohol per 100 milliliters of blood; or
>
> (c) The person has a breath-alcohol level of 0.08 or more grams of alcohol per 210 liters of breath.
>
> (2)
> . . . .
> (b) 1. Any person who is convicted of a third violation of this section for an offense that occurs within 10 years after a prior conviction for a violation of this section commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
> . . . .
> For the purposes of this section, any conviction for a violation of s. 327.35; a previous conviction for the violation of former s. 316.1931, former s. 860.01, or former s. 316.028; or a previous conviction outside this state for driving under the influence, driving while intoxicated, driving with an unlawful blood-alcohol level, driving with an unlawful breath- alcohol level, or any other similar alcohol-related

>or drug-related traffic offense, is also considered a previous conviction for violation of this section.

Fla. Stat. § 316.193 (effective July 1, 2002 to June 30, 2004).

In the state post-conviction proceeding, the state court found as fact that Petitioner admitted he was convicted of a DUI on January 7, 1999 (Doc. 18, Ex. D at 25). Additionally, the court found that Petitioner admitted he was arrested for DUI in 1991, but he asserted that the charge was reduced to reckless driving (*id.*). The state court found that, based upon the information in the pre-sentence investigation report (PSI), Petitioner was convicted of DUI on July 3, 1991, as well as in 1999, and Petitioner had a separate conviction for reckless driving on March 14, 1994 (*id.* at 26). Thus, the record supported the existence of two prior DUI convictions and a reckless driving conviction, contrary to Petitioner's assertions (*id.*). Based upon these factual findings, the state court concluded that Petitioner had the requisite predicate convictions to qualify him for conviction under the felony DUI statute (*id.*).

Petitioner has failed to rebut the state court's factual findings with clear and convincing evidence; therefore, the factual findings are presumed correct. Furthermore, the state court's findings are clearly supported by the state court record. In his Rule 3.850 motion, Petitioner admitted his was convicted of DUI in 1998 or 1999 (*see* Doc. 18, Ex. C at 4). Additionally, the PSI attached to the order denying the Rule 3.850 motion shows that Petitioner was indeed convicted of DUI on January 7, 1999; he was convicted of DUI on July 3, 1991; and he was convicted of reckless driving on March 14, 1994 (*id.*, Ex. D at 39). Based upon these facts, as well as this court's obligation to abide by the state court's ruling that the prior DUI conviction qualified as predicate offenses under the state's felony DUI statute, Petitioner has failed to demonstrate that there was an insufficient factual basis for his plea to felony DUI. Accordingly, he is not entitled to federal habeas relief.

>B.   Ground two: "Ineffective assistance of counsel for failure to investigate in violation of his right to effective assistance of counsel, Sixth and Fourteenth Amendments."

(Doc. 1 at 4). Petitioner asserts that during meetings with his counsel, he informed counsel that he was convicted of DUI in 1998–1999, but he was uncertain whether he was convicted for DUI in 1991 (*id.*, supporting memorandum at 7). Petitioner states that his counsel did not investigate

whether Petitioner had been convicted of a second DUI, and if he had investigated this issue, he would have objected to the PSI as incorrect, and Petitioner would not have pleaded guilty to felony DUI (Doc. 1 at 4, supporting memorandum at 6–8).

Respondent concedes that Petitioner exhausted this claim in the state courts (Doc. 13 at 11). Respondent argues that Petitioner failed to show that the state court decision denying his claim was contrary to or an unreasonable application of Supreme Court law (*id*. at 11–17).

    1.  Clearly Established Supreme Court Law

When a defendant challenges his plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies. Hill v. Lockhart, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985). To obtain relief under Strickland, Petitioner must establish: (1) that his counsel's representation "fell below an objective standard of reasonableness," and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. Strickland, 466 U.S. at 688.

The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances." Strickland, 466 U.S. at 688. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Indeed, the Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently

> made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

McMann v. Richardson, 397 U.S. 759, 769–70, 90 S. Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970). To succeed on an ineffective assistance claim, Petitioner must rebut a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 690.

The second prong of the Strickland analysis requires Petitioner to show that he was prejudiced as a result of counsel's deficient performance. To satisfy this element, Petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Hill, 474 U.S. at 58.

> . . . where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

*Id.* at 59. Petitioner must allege in his habeas petition that, had counsel correctly advised him during plea discussions, he would have pleaded not guilty and insisted on going to trial; or he must come forth with objective evidence that might support the conclusion that he placed particular emphasis on the alleged misinformation in deciding whether or not to plead guilty. *Id.* at 60.
showing that but for counsel's errors, he would not have accepted the plea offer and would have insisted on going to trial.

        2.        Federal Review of State Court Decision

Petitioner raised this claim as Ground Two in his Rule 3.850 motion (*see* Doc. 18, Ex. C at 5–11). Petitioner asserted that he told his counsel he had a prior DUI in 1998 or 1999, and that he arrested for DUI in 1991, but he was unsure whether he was convicted of it (*id*. at 7–8). Petitioner further asserted that at his sentencing hearing, defense counsel did not object to the PSI (*id*. at 6). Further, counsel did not object to the sentencing scoresheet even though it included only one prior conviction for DUI (*id*. at 6–7, Ex. A). Petitioner claimed that defense counsel should have

investigated whether Petitioner had the requisite predicate DUI convictions to support his conviction for felony DUI, and, but for counsel's error, he would not have been convicted of felony DUI and his sentence for DUI Manslaughter would have been less severe (*id*. at 8–11).

In the written opinion denying Petitioner's claim, the post-conviction court found as fact that Petitioner had two prior convictions for DUI, one in 1999 and the other on July 3, 1991 (*id*., Ex. D at 26). The state court's written opinion identified the Strickland standard as the applicable standard for evaluating claims of ineffective assistance of counsel (*id*.). Based upon its application of Strickland to its factual findings, the post-conviction court concluded that defense counsel's performance was not deficient because it appeared that counsel's assessment of Petitioner's prior record was correct (*id*.). Furthermore, because the sentencing court was not misinformed as to the number of Petitioner's prior DUI convictions, the court's sentencing decision was not prejudiced by counsel's failure to investigate Petitioner's prior criminal record (*id*. at 27)

Because the state court correctly identified Strickland as the governing precedent, Petitioner is entitled to federal habeas relief only if he demonstrates that the state court decision was based upon an unreasonable determination of the facts or that the state court decision was an unreasonable application of Strickland.

Initially, Petitioner has failed to provide clear and convincing evidence to rebut the state court's factual finding that he was convicted of DUI on two prior occasions, the most recent being in 1999. Although Petitioner submitted the criminal punishment code scoresheet that included only one prior DUI in the "Prior Record" section, the fact that only one prior DUI was scored does not constitute clear and convincing evidence that only one existed. Petitioner has failed to show that the scoresheet was more reliable than the PSI, which included a more detailed description of Petitioner's criminal history. Furthermore, although Petitioner asserts that the PSI stated "exact disposition unknown" with regard to the DUI charge in 1991, a review of the PSI shows that it expressly states that Petitioner was convicted of DUI on July 3, 1991 in the Pritchard Municipal Court, but the details of the sentence were unknown (Doc. 18, Ex. D at 39). Evidence that the sentencing scoresheet scored only one prior DUI, and the PSI did not describe Petitioner's sentence for his 1991 DUI, does not constitute clear and convincing evidence that Petitioner was not convicted of DUI in 1991. Therefore, the state court's finding that Petitioner had two prior DUI

convictions is presumed correct. Based upon this finding, Petitioner failed to establish that his plea was based upon erroneous information regarding the prior convictions, or that his sentence would have been different if counsel had further investigated the prior convictions. Therefore, the state court decision was not contrary to or an unreasonable application of Strickland.

>    C.    Ground three: "Ineffective assistance of counsel for falsely inducing Petitioner to accept plea through misadvice regarding consequences, Sixth and Fourteenth Amendments."

(Doc. 1 at 5). Petitioner asserts that his counsel induced him to plead guilty by informing him that he could not win at trial based upon the fact that Petitioner was found in the driver's seat of the vehicle involved in the roll-over crash that killed William Hatcher, the other occupant of the vehicle, as well as the fact that an accident reconstruction specialist stated in his deposition that it was impossible for the two occupants to have changed places during the roll-over collision (*id*., supporting memorandum at 9). Additionally, Petitioner states that his counsel failed to inform him of two pieces of evidence, the deposition of Lisa Dale, who stated that Petitioner was in the passenger's seat of the vehicle minutes before the crash, and two versions of a Florida Highway Patrol (FHP) Inventory and Vehicle Storage Receipt, which initially identified the driver as William Hatcher, the vehicle's owner, and was subsequently changed to identify Petitioner as the driver (*id*., supporting memorandum at 9–10). Petitioner also asserts, in his reply to Respondent's answer, that defense counsel misadvised him about the maximum penalty he faced if he went to trial (Doc. 15 at 4). Petitioner states that counsel told him he faced a maximum sentence of 18–22 years of incarceration if he went to trial and was convicted of the crimes for which he was charged; however, according to Petitioner's calculation, the maximum sentence he could have received was only sixteen (16) years (*id*.). Petitioner asserts that if counsel had correctly advised him of the maximum penalty he faced if he went to trial and informed him of the Florida Highway Patrol evidence and Ms. Dale's statement, he would not have pleaded guilty (Doc. 1, supporting memorandum at 11).

Respondent concedes that Petitioner exhausted this claim in the state courts (Doc. 13 at 18). Respondent argues that Petitioner failed to show that the state court decision denying his claim was contrary to or an unreasonable application of Supreme Court law (*id*. at 18–24).

>    1.    Clearly Established Supreme Court Law

The standard for evaluating claims of ineffective assistance of counsel with respect to guilty pleas is set forth *supra*.

### 2. Federal Review of State Court Decision

In the Rule 3.850 motion, Petitioner asserted that in early November of 2003, defense counsel informed him that the State Attorney had offered a plea agreement including the following terms: (1) Petitioner would enter an "open" plea to DUI Manslaughter and felony DUI (counts 1 and 3 of the Information (*see* Doc. 18, Ex. D at 28)); (2) the State would drop counts 2 and 4 of the Information (charging Petitioner with vehicular homicide, a second degree felony, and DUI with 0.20 blood or breath alcohol level or higher causing property damage, a misdemeanor (*see id.*, at 28–29)); and (3) Petitioner's sentence would be "capped" at twelve (12) years of imprisonment, with the amount of restitution to be determined by the court (Doc. 18, Ex. C at 13). Petitioner contended that defense counsel erroneously advised him that he faced 18–22 years of imprisonment if he lost at trial, whereas the plea agreement capped his exposure at twelve (12) years in prison with the possibility that the court could sentence him to less (*id*. at 15). Petitioner argued that the maximum sentence he could have received if he went to trial was sixteen (16) years, and if counsel had correctly informed him of this, he would not have pleaded guilty (*id*. at 16–17). Petitioner did not mention the FHP Inventory and Vehicle Storage Receipt in his Rule 3.850 motion. Furthermore, his motion suggested that he was aware of Lisa Dale's potential testimony when he met with defense counsel to discuss the plea offer because Petitioner stated that despite Ms. Dale's potential testimony, defense counsel advised him that there was no way he could win at trial (*id*. at 14–15).

In the written order denying Petitioner's claim, the state court made the following determinations: (1) the felony DUI count (count 3) was a third degree felony and carried a maximum sentence of five (5) years under Florida law; (2) Petitioner faced a potential sentence of fifteen (15) years on either the DUI manslaughter count (count 1) or the vehicular homicide count (count 2); (3) the charge of DUI with 0.20 blood or breath alcohol level or higher causing property damage (count 4) carried a maximum of one (1) year in the county jail; and (4) Petitioner faced a maximum possible sentence of twenty-one (21) years of incarceration if he was found guilty on all counts and received consecutive sentences (Doc. 18, Ex. D at 26–27). Based upon the state court's interpretation of state law, the court concluded that defense counsel's advice, that Petitioner faced

a maximum potential sentence of 18–22 years, was substantially correct (*id*. at 27). Therefore, defense counsel did not perform deficiently in advising Petitioner of the maximum penalty he would face if he rejected the plea agreement and was convicted after trial (*id*.).

As discussed *supra*, this court must abide by the state court's rulings on matters of state law; thus, the court accepts the state court's determination that Petitioner faced a maximum possible sentence of twenty-one (21) years of incarceration if he was found guilty on all counts and received consecutive sentences. In light of this determination, counsel's advice that Petitioner faced a maximum potential sentence of 18–22 years if he lost at trial was not unreasonable. *See* Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"); Stano, 921 F.2d at 1150–51 (under the Strickland standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused); Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990) (absent a blatant error, the court should presume that counsel's conduct fell within the wide range of reasonably professional assistance); Smith v. Singletary, 170 F.3d 1051, 1054 (11th Cir. 1999) ("A lawyer's affirmative misrepresentation about the consequences of a guilty plea may, in some cases, fall below the wide range of professional competence. But ultimately, '[i]n any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.'" (quoting Strickland, 466 U.S. at 688)).

Furthermore, Petitioner failed to demonstrate he was prejudiced by counsel's alleged failure to advise him of the FHP documents and Lisa Dale's statement. While counsel can be deemed ineffective under Strickland for failing to provide proper advice during the plea process, Petitioner must allege that but for his attorney's errors, he would not have accepted the plea offer, or he must come forth with objective evidence to show that but for counsel's errors he would not have accepted the plea offer and insisted on going to trial. *See* Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991); Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991). Conclusory, self-serving, after-the-fact statements that Petitioner would not have pled and would have insisted on going to trial do not meet this requirement. *See* Diaz, *supra*; Toro, *supra*; *see also* United States v. Gordon, 156 F.3d 376, 380–81 (2nd Cir. 1998); Johnson v. Duckworth, 793 F.2d 898, 902 n. 3 (7th Cir. 1986). In the instant case, Petitioner adamantly argued the following in his Rule 3.850 motion:

>      Based upon the aforesaid facts [Petitioner's assessment that the maximum sentence he could have received if he was convicted on all four counts was 16 years], Defendant's plea was falsely induced, because of defense counsel's misadvice. Therefore, because the Defendant could not possibly have made an intelligent [sic] and knowing plea, where he was unaware of the consequences involved, said plea cannot be considered voluntarily entered . . .
>
>      It is well established law that a defendant must be aware of the direct consequences which attend a plea; because in order to be voluntary, it must be made by one who is fully aware of the consequences.
>
>      The Defendant alleges that he would not have accepted the State's plea offer had either defense counsel, or the court advised him properly of the maximum penalties he could have received. Defendant who has always maintained his innocence would have had nothing to lose by refusing the State's plea offer.
>
>      <u>It was specifically due to defense counsel's misadvice regarding the maximum sentence the Defendant was possibly facing that induced the Defendant to accept the State's plea offer. Had the Defendant known he was only facing a maximum of four (4) more years by taking the case to a jury trial, Defendant avers he would have taken his chances with a jury of his peers</u>, in light of all the evidence. Thus, it can clearly be said, based upon the aforesaid, that the results of the proceedings would have been different.
> . . . .
>      And, finally, <u>it is specifically due to defense counsel's misadvice as to the potential consequences which attended the State's plea offer that falsely induced Defendant to accept said plea. Had Defendant been fully aware of these consequences he could have made a knowing and intelligent decision, and said decision would have been to go to trial.</u> Therefore, because of defense counsel's substandard level of performance, the resulting prejudice to the Defendant affected the outcome of the proceedings; because <u>had the Defendant been properly and fully informed of the consequence faced, Defendant would have proceeded to trial</u> and the final results would have been different.

(Doc. 18, Ex. C at 15–19) (emphasis added). Petitioner made no mention in his verified Rule 3.850 motion that his decision to plead guilty was in any way influenced by counsel's alleged failure to inform him of the FHP documents and Lisa Dale's potential testimony. Furthermore, the following unclear, self-serving, after-the-fact statement in Petitioner's verified habeas petition is insufficient to demonstrate that Petitioner would have insisted on going to trial if counsel had informed him of the FHP documents and Ms. Dale's statement:

> Ground three: Ineffective assistance of counsel for falsely inducing Petitioner to accept plea through misadvice regarding consequences, Sixth and Fourteenth Amendments.
>
> Petitioner was induced into accepting plea by counsel, who informed him he could not win if case went to trial based on deposition of accident reconstruction specialist who would say it was impossible the two occupants changed positions or places during vehicle's roll over, which led to charges against client. Also, had depo of Lisa Dale been considered, it would have been clear Petitioner was not driver nor have been induced [sic] to plea.

(Doc. 1 at 5). Although Petitioner asserts in his supporting memorandum and his traverse that he would not have pled guilty if counsel had advised him of Ms. Dale's statement and the FHP documents, these assertions are unverified and, therefore, insufficient to demonstrate a reasonable probability that but for counsel's alleged failure to discuss all of the evidence with Petitioner, he would not have accepted the plea offer and would have gone to trial. In light of Petitioner's insistence in his verified Rule 3.850 motion that his acceptance of the plea offer was specifically due to defense counsel's advice regarding the maximum sentence he faced if he went to trial, as well as the absence of any clear, verified statement in this habeas action concerning the effect of counsel's failure to discuss the FHP documents and Ms. Dale's deposition, the undersigned concludes that Petitioner failed to establish a reasonable probability that he was prejudiced by counsel's conduct during the plea discussions. Because Petitioner failed to satisfy both prongs of the Strickland standard with regard to counsel's conduct during the plea process, he is not entitled to federal habeas relief.

Accordingly, it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this 17th day of October 2007.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.**  *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**